# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

BRANT MAC FOLLOWELL, )
)
       Plaintiff, )
)
v. ) Case No. CIV-15-327-JHP-SPS
)
CAROLYN W. COLVIN, )
Acting Commissioner of the Social )
Security Administration, )
)
       Defendant. )

## REPORT AND RECOMMENDATION

The claimant Brant Mac Followell requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born August 5, 1951, and was sixty-two years old at the time of the administrative hearing (Tr. 42). He completed four or more years of college, and has worked as a teacher and dispatcher (Tr. 32, 148). The claimant alleges inability to work since April 1, 2011, due to knee replacement, knee surgeries, rotator cuff surgery, bilateral degenerative joint disease, chronic dizziness, chronic restless legs, and neuropathy of the feet (Tr. 147).

## Procedural History

On April 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 6, 2014 (Tr. 22-33). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a limited range of light work as defined in 20 C.F.R. §§ 404.1567(b), *i. e.*, he could lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk/sit six hours in an eight-hour workday, but that he had the additional limitations of occasionally climbing ramps and

stairs, but never climbing ladders, ropes, or scaffolds; never balancing; occasionally kneeling and crawling, but frequently stooping and crouching, and that he must avoid even moderate exposure to vibrations. Additionally, the ALJ found the claimant needed a sit/stand option every 20-25 minutes throughout the workday for the purpose of changing positions, and that he would need to temporarily walk away from the workstation to stretch his legs (Tr. 26). The ALJ concluded that the claimant was therefore not disabled because he could return to his past relevant work as a teacher (but not as a dispatcher) (Tr.32).

## Review

The claimant contends that the ALJ erred by (i) improperly evaluating his RFC, including improper credibility findings; and (ii) improperly concluding that he could return to his past work as a teacher. The undersigned Magistrate Judge agrees with the claimant's first contention, and the decision of the Commissioner should therefore be reversed.

The relevant medical evidence reflects that the claimant has undergone a total left knee replacement, followed by a left total knee arthroplasty, as well as right rotator cuff surgery (Tr. 232-248). Following a February 11, 2011 study, the claimant was assessed with moderate obstructive sleep apnea syndrome, periodic limb movement sleep disorder and a history suggestive of restless leg syndrome, short sleep onset latency, history of insomnia, overweight, snoring, and a history of nocturnal heartburn (Tr. 213). It was recommended he undergo a sleep study with a CPAP, possible medication management, sleep positioning, and weight reduction (Tr. 213).

On July 10, 2012, Dr. Ronald Schatzman conducted a consultative examination of the claimant. He noted the claimant's medical history, and his general exam noted that both the claimant's knees had limited flexion, that he had difficulty going up and down stairs, that bilateral neuropathy would impair his ability to walk in the dark, and that he had chronic low back pain (Tr. 254-255). He assessed the claimant with post laminectomy, hypertension, neuropathy of the legs, obesity, and knee pain (Tr. 256).

State reviewing physicians determined that the claimant could perform light work, but that he could frequently stoop and crouch; occasionally climb ramps/stairs, balance, kneel, and crawl; and never climb ladders/ropes/scaffolds (Tr. 262-263).

The claimant was also treated at the Spine and Orthopedic Institute in Tulsa, Oklahoma. On October 22, 2013, he presented with bilateral hip and leg pain that was categorized as constant and severe, and aggravated by any type of physical activity including standing and walking, and that he had symptoms consistent with neurogenic claudication as well as lumbar radiculopathy (Tr. 325). An MRI revealed severe spinal stenosis at L3-4 secondary to facet and ligament of flavum hypertrophy, and Dr. Gregory Wilson recommended a right L3-4 hemilaminectomy (Tr. 325). He then underwent that procedure on October 25, 2013 (Tr. 326).

At the administrative hearing, the claimant testified that most of his work history consisted of teaching science and business at a high school, and that he became disabled due to problems with his knees and back, and that he had undergone multiple knee surgeries as well as a back surgery (Tr. 44-47). He testified that sitting any length of time is problematic due to sciatica, that he cannot walk much, and that he needs to be up and

-5-

down to prevent stiffness (Tr. 47). He stated that he can sit thirty or forty minutes at a time, and that his replaced knee gets very stiff with a lack of range of motion (Tr. 48-49). He further testified that his neuropathy had affected his balance, and included a loss of sensation in his feet and extremities, and that he anticipated he would likely have to have his other knee replaced before too long (Tr. 50-51).

In his written opinion at step two, the ALJ found that the claimant had the severe impairments of status post left total knee arthroplasty, lumbar degenerative disc disease, history of right knee surgery, and obesity, as well as the nonsevere impairments of bilateral degenerative joint disease, dizziness, restless leg syndrome, neuropathy, and status post right rotator cuff surgery (Tr. 25). Additionally, without specifically categorizing it, the ALJ acknowledged a sleep study in which the claimant was assessed with moderate obstructive sleep apnea, periodic limb movement disorder, and a history suggestive of restless legs syndrome (Tr. 25). At step four, the ALJ summarized the claimant's hearing testimony and much of the medical evidence. He then assigned great weight to the consultative examiner's report and the opinions of the state reviewing physicians (Tr. 31-32). He used boilerplate language to state that the claimant was not credible, then stated that he "found the claimant to be a very honest and credible person" (Tr. 31). He did not mention or discuss the nonsevere impairments at step four, and ultimately determined that the claimant was not disabled.

Although the argument has been repeatedly rejected in this Circuit, the claimant persists in the argument that the ALJ erred in failing to find additional several impairments. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the

ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal."). However, the claimant further (correctly) contends that the ALJ erred at step four in failing to consider all of his impairments – both severe and nonsevere – in combination, which he is required to do. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004), *quoting* 20 C.F.R. § 404.1523). *See also Hill v. Astrue*, 289 Fed. Appx. at 292 ("But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. But here the error *was not* harmless, because the ALJ entirely failed to account for the claimant's nonsevere impairments in assessing his RFC. Additionally, the ALJ failed to properly assess the combined effect of all the claimant's impairments – both severe and nonsevere – in assessing his RFC. *See, e. g., Grotendorst v. Astrue*, 370 Fed. Appx. 879, 884 (10th Cir. 2010) ("[O]nce the ALJ decided, without properly applying the special technique, that Ms. Grotendorst's mental impairments were

not severe, she gave those impairments no further consideration. This was reversible error."). *See also McFerran v. Astrue*, 437 Fed. Appx. 634, 638 (10th Cir. 2011) (unpublished opinion) ("[T]he ALJ made no findings on what, if any, work-related limitations resulted from Mr. McFerran's nonsevere mood disorder and chronic pain. He did not include any such limitations in either his RFC determination or his hypothetical question. Nor did he explain why he excluded them. In sum, we cannot conclude that the Commissioner applied the correct legal standards[.]").

Because the ALJ failed to properly account for the claimant's non-severe impairments, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 31st day of August, 2016.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**